76 F.3d 276
 96 Cal. Daily Op. Serv. 750, 96 Daily Journal
D.A.R. 1181
HITACHI DATA SYSTEMS CORP., Plaintiff-Appellant,
v.
UNITED PARCEL SERVICE, INC.; Columbia Shipping, Inc.;
Circle Freight International; Avia Trading,
Defendants-Appellees.
 No. 94-15292.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Aug. 18, 1995.*
Decided Feb. 2, 1996.
 
 1
 David M. Salentine, San Francisco, California, for plaintiff-appellant.
 
 
 2
 Paul T. Friedman, Morrison & Foerster, San Francisco, California, and Russell P. Brown, Littler, Mendelson, Fastiff, Tichy & Mathiason, San Diego, California, for defendants-appellees.
 
 
 3
 David E. Russo, Law Offices of David Russo, San Francisco, California, for defendant-appellee Columbia Shipping, Inc.
 
 
 4
 Appeal from the United States District Court for the Northern District of California.
 
 
 5
 Before: KOZINSKI and NOONAN, Circuit Judges, BREWSTER, District Judge.**
 
 BREWSTER, District Judge:
 
 6
 Hitachi arranged for the shipment of seven crates of computer equipment from California to the Netherlands, which were damaged when they fell off a dolly at Schiphol Airport in Amsterdam. Damage claims against air carriers are governed by the Warsaw Convention.[1] See Convention for Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876, reprinted in 49 U.S.C. § 1502 note (1988) ["Warsaw Convention"]. The air waybills for Hitachi's shipment required Hitachi to provide written notice of damage to the carrier within 14 days of delivery.[2] Although the incident occurred on March 24, 1991, Hitachi submitted no written notice until December 21, 1992.
 
 
 7
 Hitachi argues that Defendants-Appellees gave Hitachi an air waybill that failed to provide all the particulars required by Article 8 of the Convention. Specifically, Hitachi alleges that the waybill violated subsections (b), (c) and (e) of Article 8, by listing an incorrect place of departure, neglecting to provide a valid address for Defendant-Appellee United Parcel Service ["UPS"], and omitting a scheduled refueling stop in Newfoundland. Hitachi argues that Defendants-Appellees' failure to adhere to the requirements of Article 8 makes the 14-day notice period inapplicable--thus permitting it to recover from Defendants-Appellees despite having waited a year and a half to file a claim.
 
 
 8
 This presents us with two questions. First, does Defendants-Appellees' alleged failure to comply with the requirements of Article 8 of the Warsaw Convention prevent them from relying upon the untimeliness of Hitachi's damage claim to avoid liability? Second, even if an Article 8 violation does not normally exempt a claimant from notice requirements, may its non-compliance be excused in this case because the incorrect address of Defendant-Appellee UPS on one waybill prevented notice?
 
 
 9
 (1) Article 9 of the Warsaw Convention provides that if a carrier accepts goods without an air waybill containing "all the particulars set out in article 8(a) to (i), inclusive, and (q), the carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability." Warsaw Convention, art. 9. Arguing that notice requirements are just such provisions that "exclude or limit liability," Hitachi asks us to find its claim timely because of the failure of one waybill to comply with subsections (b), (c) and (e) of Article 8.
 
 
 10
 Although notice rules can, in one sense, "exclude" liability--because untimely claims subject a carrier to no liability at all--courts have long recognized that the Warsaw Convention does not regard them as provisions encompassed by the Article 9 exemption. Rather, Article 9 and other references to provisions which "exclude," "limit," or "tend[ ] to relieve the carrier of" liability, see, e.g., Warsaw Convention, Arts. 3(2), 23, 25, reach only provisions such as Articles 20 and 22, which limit damages recoverable against a carrier under the Convention or exclude it entirely in certain circumstances. See Onyeanusi v. Pan Am, 952 F.2d 788, 794 (3d Cir.1992) ("Article 9 ... only excuses the monetary liability limitations, not the notification requirements."); St. Paul Ins. Co. v. Venezuelan Int'l Airways, Inc., 807 F.2d 1543, 1549 (11th Cir.1987) ("In Warsaw Convention cases, limitations periods, whether imposed by the treaty itself or by contract, have not been held to be provisions limiting or excluding liability."); Butler's Shoe Corp. v. Pan American World Airways, Inc., 514 F.2d 1283, 1285 (5th Cir.1975) (limitations periods imposed by the Convention or by contract are not considered provisions limiting or excluding liability); Denby v. Seaboard World Airlines, Inc., 575 F.Supp. 1134, 1145 (E.D.N.Y.1983) ("[T]he Article 26 notice provision is not one excluding or limiting liability within the meaning of Article 9."), rev'd on other grounds, 737 F.2d 172 (2d Cir.1984); cf. Molitch v. Irish Int'l Airlines, 436 F.2d 42, 44 (2d Cir.1970) (limitations period of Art. 29(1) is not a provision excluding or limiting liability).
 
 
 11
 Hitachi relies upon Maritime Ins. Co. v. Emery Air Freight Corp., 983 F.2d 437 (2d Cir.1993), to provide a contrary rule--going so far as to argue that this Second Circuit case "effectively reversed" the Third Circuit's Onyeanusi decision. Hitachi feels that Maritime should control in the instant action, and "urges the Ninth Circuit to adopt and apply [it] in this case."
 
 
 12
 Hitachi's reliance upon Maritime is misplaced. Maritime dealt with whether a carrier could still avail itself of the Warsaw Convention's liability limits despite having failed to provide certain particulars on its waybill as required by Article 8. A previous Second Circuit case, Exim Indus. v. Pan American World Airways Inc., 754 F.2d 106 (2d Cir.1985), had permitted a carrier to enjoy the Convention's liability limits even though it had failed to comply with subsections (h) and (i) of Article 8. Maritime limited Exim to its facts, finding that violations of any other subsections of Article 8 would cause a carrier to forfeit the Convention's liability limitations. 983 F.2d at 440-41.
 
 
 13
 Maritime, however, does nothing for Hitachi here. Were Defendants-Appellees attempting to limit Hitachi's recovery to the Convention's $20-per kilogram limit, the case might have some relevance if the alleged violations of Article 8 could be shown. But Hitachi seeks to escape the waybills' notice requirement, not the liability restriction of Article 22(2). Maritime does nothing to undermine the settled Second Circuit rule that limitations periods such as Article 26(2) and Article 29(l ) are not provisions that "exclude or limit liability" in the first place. See e.g., Molitch, 436 F.2d at 44.
 
 
 14
 Hitachi has given us no reason to question this interpretation. As ably explained with respect to passenger ticket provisions by Judge Weinstein in Denby, 575 F.Supp. at 1147, the purpose of a provision such as Article 9 is to prevent carriers from taking advantage of liability limits when they have not provided shippers with information needed to make an informed decision about the advisability of air carriage under the Convention's limited-liability regime. As with the information required on passenger tickets (by Article 3) and on baggage checks (by Article 4), the Article 8 waybill requirements help would-be shippers understand the terms of the agreement into which they are entering. A carrier's failure to allow shippers a fully-informed decision quite reasonably prevents the carrier from taking advantage of liability limitations to which a shipper imperfectly agrees.
 
 
 15
 No such purpose, however, is served by notice requirements such as Article 26(2), or the 14-day period in the waybills here, which protect the interests of carriers themselves. Their aim is to facilitate prompt notice of carriers' exposure to liability from damage claims. The Warsaw Convention provides no notice period for claims relating to the complete loss or destruction of cargo, because if a carrier never delivers a shipment at all--or delivers one demolished--it may reasonably be presumed to be aware of the problem. See Dalton v. Delta Airlines, Inc., 570 F.2d 1244, 1247 (5th Cir.1978). The Convention, however, provides a notice period in which claims for damage must be filed because unlike destruction or simple loss, mere damage to goods may not be apparent to the carrier at all. Stud v. Trans Int'l Airlines, 727 F.2d 880, 883 (9th Cir.1984). It is thus the recipient's responsibility to provide prompt notice of claims. A limitations provision for such notice serves the same important purpose as do limitations periods generally: sparing potential defendants of the burden of having to defend themselves against "stale" claims brought long after the wrong alleged. See, e.g., United States v. Kubrick, 444 U.S. 111, 117, 100 S.Ct. 352, 356-57, 62 L.Ed.2d 259 (1979).
 
 
 16
 It serves no purpose to absolve recipients of any need to pursue their claims with diligence merely because of irregularities on a waybill. The unfairness of bringing long-overdue claims is not lessened by a shipper's possession of inadequate information about the initial terms of carriage. Indeed, in the event of tardy damage claims it is the recipient who possesses the information advantage, not the carrier. An exemption from notice requirements would make their relationship doubly unequal.
 
 
 17
 If the Warsaw Convention's limitations periods are in fact provisions that "limit or exclude liability" within the meaning of Articles 3(2), 9, 23 and 25, an irregular waybill would permit a claim to be brought many years after the damage is alleged to have occurred. Cf., Warsaw Convention, art. 29(1) (providing that right to claim damages "shall be extinguished if an action is not brought within 2 years"). This would subject carriers to a perpetual exposure quite out of keeping with the underlying liability-limiting purposes of the Convention. See Onyeanusi, 952 F.2d at 792 ("[T]he two goals of the Convention were to create uniformity in the filing of claims and, more importantly, to limit the potential liability of air carriers.").
 
 
 18
 This distinction between liability-limiting provisions on the one hand, and the Warsaw Convention's notice rules is also suggested by the text. Articles 3 and 4, for example, both provide that while irregularities in the information provided by a passenger or baggage carrier preclude him from relying upon "those provisions of [the] convention which exclude or limit his liability," such carriage relationships "shall none the less be subject to the rules of this convention." Warsaw Convention, Arts. 3(2), 4(4). The drafters of the Convention clearly did not contemplate that informational irregularities would leave carriers--the special objects of the Convention's protection--entirely at the mercy of their customers. Such defects, rather, waive only a narrow category of liability-limiting provisions.
 
 
 19
 We therefore see no reason to depart from the interpretation adopted by every other federal court to have considered the question. Article 9 of the Warsaw Convention does not permit a shipper or recipient to avoid the notice requirements of Article 26(2) or a waybill.
 
 
 20
 (2) Hitachi, however, advances an additional reason why Defendants-Appellees' failure to provide the information required by Article 8 should allow it to escape the 14-day notice provision. If the carriers have not given a valid contact address as required by Article 8(e), Hitachi suggests, it should not be required to file a claim within the limitations period because "[t]he law does not (or at least should not) require a futile exercise." It asks, in other words, for an equitable exemption from the notice requirement.
 
 
 21
 Even were such an exemption possible, however, we could not grant it here for two reasons. First, the information provided on the air waybill did not prevent timely notice of Hitachi's damage claim. The contractual provisions on the back of the Columbia waybill to which Hitachi refers--the document listing UPS' address as "San Francisco International,"--permit notice of damage to be sent "in writing ... to the Carrier whose Air Waybill was used, or to the first Carrier or to the last Carrier or to the Carrier who performed the transportation during which the ... [damage] took place." See Maschinenfabrik Kern, A.G. v. Northwest Airlines, Inc., 562 F.Supp. 232, 236 (N.D.Ill.1983) ("[T]imely written notice to one carrier in the chain of a unitary transportation of damaged goods is ... notice to all."). A full address for Defendant-Appellee Columbia Shipping, the "Carrier whose Air Waybill was used," is provided in no less than two places on the front of the waybill. Hitachi could have perfected its damage claim by notifying Columbia, but it never did.
 
 
 22
 The second reason we cannot grant Hitachi's request is that, even if it had no valid address for any of the carriers, Hitachi does not appear even to have tried to contact UPS with notice of the damage. Hitachi's counsel made much, at oral argument on the summary judgment motion, of the fact that he had himself tried to send a letter to UPS at "San Francisco International," and that it had been returned. But a "test" mailing after the fact is not the same thing as an unsuccessful attempt to give timely notice. Hitachi alleges nothing to indicate that it attempted to notify UPS (or anyone else) of the damage within the required period--or even that it knew at the time that the address on the Columbia waybill was inadequate.
 
 
 23
 If Hitachi had really lacked a contact address for the Defendants-Appellees and had made a genuine effort to reach them with its claim of damage, this might be a different case. Some delay in providing written notice of a damage claim might be excusable where actions of the carrier made such contact difficult or even impossible--much as Article 26(4) itself permits exemption from the notice period "in the case of fraud" by a carrier. Warsaw Convention, art. 26(4). In the present case, however, Hitachi has not shown anything of the sort to have occurred.
 
 
 24
 We can therefore find no grounds to justify the relief Hitachi has requested. Summary judgment for Defendants-Appellees is
 
 
 25
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 The Honorable Rudi M. Brewster, United States District Judge, Southern District of California, sitting by designation
 
 
 [1]
 The Convention's rules of liability are also expressly incorporated by each of the two air waybills drawn up for the Hitachi shipment
 
 
 [2]
 Article 26(2) provides a default damage notice period of seven days. In the present case, however, the waybills provided for a 14-day period. Pursuant to Article 26(4), if a shipper fails to comply with the notice period, "no action shall lie against the carrier, save in the case of fraud on his part." There is no allegation of fraud in this case